UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY,<br><br>       *Plaintiffs,*<br><br>       v.<br><br>HERSCHEL KOTKES, M.D., P.C. and HERSCHEL KOTKES, M.D.<br><br><br>       *Defendants*. | Civil Action No. 1:22-cv-03611-ENV-RER |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. PRO. 12(b)(6) and 9(b)**

---

**MANDELBAUM BARRETT PC**
*Attorneys for Defendants*
*Herschel Kotkes, M.D., P.C. and*
*Herschel Kotkes, M.D.*

570 Lexington Avenue
New York, NY  10022
973-736-4600

Of counsel: Andrew R. Bronsnick, Esq.

1

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................4

I.  FACTUAL BACKGROUND ........................................................................7

   A. Summary of Allegations ........................................................................7

   B. Legislative Purpose of New York's No-Fault System .........................7

   C. State Farm's Complaint ........................................................................8

   D. State Farm's Specific Allegations ......................................................10

   E. Implications of State Farm's Relief Sought........................................10

LEGAL ARGUMENT ..........................................................................................11

I. STANDARDS UNDER FRCP 12(b)(6) AND RULE 9(b) ........................11

II. PLAINTIFF FAILED TO STATE A CLAIM FOR A DECLARATORY JUDGMENT, COMMON LAW FRAUD OR UNJUST ENRICHMENT .......................................................12

   A. Failure to State a Claim for Declaratory Judgment ...........................12

   B. Failure to State a Claim for Common Law Fraud ..............................15

   C. Failure to State a Claim for Unjust Enrichment ................................20

CONCLUSION ....................................................................................................22

# TABLE OF AUTHORITIES

## Cases

Aetna Life and Cas. Co. v. Nelson, 67 N.Y.2d 169 (1986) .........................................8

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ..............................................................6,11,15

Ashcroft v. Mattis, 431 U.S. 171 (1977)....................................................................14

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)..................................................11,15

Central General Hospital a/a/o Mandrels v. Chubb Group of Ins. Cos., 90 N.Y.2d 195 (1997)…..15

DiGuisto v. Maryland Casualty Co., supra, 90 N.Y.2d at 282…………………………………...14

Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395 (2d Cir. 2015)....................13,15

Levinson-Roth v. Parries, 872 F. Supp. 1439 (D. Md. 1995) .......................................14

4855-1869-4970, v. 1

Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160 (2d Cir. (2015)...........12

Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173 (2011) ....................................................20

Medical Society of the State of New York v. Levin, 185 Misc.2d 536, 712 N.Y.S.2d 745
    (Sup. Ct. N.Y. 2000) aff'd. 280 A.D.2d 309, 723 N.Y.S.2d 133 (1st Dept. 2001)......................7,8

Montgomery v. Daniels, 38 N.Y.2d 41, 378 N.Y.S.2d 1, 340 N.E.2d 444 (1975)……………….8

National Council of Young Israel v. Wolf, 963 F.Supp. 276 (S.D.N.Y.1997) ..............................12

Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705 (2d Cir. 2013)...12

Presbyterian Hosp. in the City of New York v. Md. Cas. Co., 90 N.Y.2d 274 (1997)..............8,14

Spinelli v. NFL, 96 F. Supp. 3d 81 (S.D.N.Y. 2015)....................................................................12

United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16 (2d Cir. 2016)........................................12

Walton v. Lumbermens Mut. Cas. Co., 88 N.Y.2d 211, 644 N.Y.S.2d 133 (1996) ......................8

# Rules

Fed. R. Civ. P.  9(b)………………………………………………………………...4, 6,12,15,20

Fed. R. Civ. P. 12(b)(6)……………………………...…………………………………..4, 11

# Statutes

Declaratory Judgment Act, 28 U.S.C. § 2201 ..............................................................................13

N.Y. Ins. Law §§ 5101, et seq…………………………………………………………………..7

4855-1869-4970, v. 1

## PRELIMINARY STATEMENT

Defendants Herschel Kotkes, M.D., P.C. and Herschel Kotkes, M.D. (collectively hereafter "Dr. Kotkes"), by and through their counsel, respectfully submit the following Memorandum of Law in support of their Motion for failure to plead fraud with the particularity required by Federal Rule Civil Procedure ("FRCP") FRCP 12(b)(6) and FRCP 9(b). Plaintiffs, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, "State Farm" or "Plaintiff"), routinely sue doctors and settle dubious fraud claims as a business line.  In recent years, State Farm has filed more than 20 actions in the Eastern District of New York alleging fraud related to medical providers. The complaints and allegations are generally designed to attack medical providers' medical treatment by challenging medical necessity and alleged misrepresentations about patient injuries suffered in automobile accidents.

As State Farm continues to file and settle these template cases, it has become clear that State Farm is not the white knight, crusading to rid the landscape of unscrupulous health care providers, it pretends to be. These cases are about money. State Farm views these claims as a source of revenue—an opportunity to not pay or recover payments for health care services provided to its insureds.

For example, State Farm regularly claims that health care providers are providing unnecessary/fraudulent medical services. Yet, when State Farm settles these cases, it does not require that the settling health care parties cease *providing* medical care for the allegedly unnecessary/fraudulent medical services.  Instead, State Farm insists that health care providers cease *billing* State Farm for those services. In other words, State Farm has no issue with the "medically unnecessary" or "fraudulent" services being provided to its insureds if State Farm does not have to pay for the services. That reveals State Farm's true motive: profit.

Essentially, while State Farm overtly (in lawsuits) claims that it is entitled to relief under common law fraud because the underlying health care services are medically unnecessary or

4

fraudulent, State Farm covertly (through settlement agreements in those cases) agrees that the health care providers can continue to provide the purportedly unnecessary or fraudulent services as long as State Farm can avoid paying for the services. For example, State Farm recently sought to enforce one of its settlement agreements. Therefore, these cases are an excellent investment for State Farm, which can then provide casualty benefits to insureds literally at the expense of health care providers and at little to no cost to State Farm.

The scores upon scores of cases filed against pain management practices, chiropractors, and physical therapists amplify that point. State Farm cannot possibly view the entire health care practice of treating automobile accident victims as fraudulent, but State Farm, nevertheless, likely intends to keep working down a list of claims paid to recover as much as it can and leverage its market power to extract billing restrictions from health care providers under the guise of fraud. State Farm does this by filing voluminous pleadings, rife with unlawful sounding conduct, and framing its allegations to leverage favorable financial settlements.

This is another of those cases. State Farm filed a Complaint purporting to allege common law fraud based upon "medical services [that] were neither reasonable, related or medically necessary" for State Farm insureds. However, the Complaint is rife with vague and unverified spreadsheet and fails to identify a single specific representation made by Dr. Kotkes which was *actually false* or any material fact that Dr. Kotkes actually omitted.  In fact, despite offering sweeping over-simplification about the medical treatment provided, State Farm fails to identify any specific medical treatment that was not actually performed by Dr. Kotkes. Likewise, the allegations do not sound in fraud, where a peer review or independent medical evaluation was cited or provided. Instead, State Farm's allegations are critical of the manner of medical treatment provided by Dr. Kotkes, akin to a dispute over the "standard of care" or "medical necessity." In fact, State Farm's Complaint concedes that State Farm paid Dr. Kotkes for the services rendered and only seeks to challenge the underlying treatment for completed and prospective billing

claims.  When the conclusory allegations are cut away, this case is not about fraud. This case is about State Farm not wanting to pay for medical services and seeking to dictate how doctors practice medicine for profoundly injured patients. In short, State Farm's claims are no claims at all.

State Farm's Complaint asserts a grand scheme based solely on Dr. Kotkes' course of medical treatment, citing his initial evaluations as a "sham," but fails to provide rudimentary detail sufficient to comply with FRCP 9(b).  To satisfy this standard, the Complaint must contain enough "factual content….to draw the reasonable inference that [D]efendant[s are] liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citation omitted). The Complaint fails to provide specificity of fraud. For example, State Farm relies heavily on a summary spreadsheet for 86 insureds who received medical treatment with Dr. Kotkes from April 2017 to February 2020 (hereinafter referred to as the "chart").[1] The criticism of Dr. Kotkes is mostly derived from the initial evaluation and subsequent treatment alleged as not "medically necessary" throughout the Complaint.  The 86 patients represent State Farm's selected sample for purposes the Complaint.  This allows State Farm to manipulate statistical analysis. However, all patients seek Dr. Kotkes' care for pain management, after their injuries did not resolve through conservative treatment. His initial evaluations demonstrate the "possible" treatment options during the initial evaluation. These are proposed options, often not actual treatment. For example, while State Farm contends that almost every patient receives a recommendation for a cervical discectomy in the chart, only 3 of the 86 underwent the procedure. State Farm's broad stroke allegations are nothing more than State Farm's attempt to invalidate all of the Defendants' prior and pending claims under the guise of fraud.

---

[1]  Exhibit 1 to State Farm Complaint.

## I.     FACTUAL BACKGROUND

### A.     Summary of Allegations

State Farm alleges that the Defendants billed and received payment under the State Farm insurance policies and New York's No-Fault law for services that were fraudulent and seeks return of these payments. State Farm also seeks a declaratory judgment to prevent the Defendants from seeking payment on pending or future bills.

The central issue raised in the Complaint is whether Dr. Kotkes' medical treatment was medically necessary.  There is no dispute that Dr. Kotkes provided the medical services, submitted medical bills in compliance with the No-Fault law and requested payment from State Farm. In many instances, State Farm paid Dr. Kotkes for his medical treatment services for his patients, the State Farm policyholders.

### B. Legislative Purpose of New York's No-Fault System

New York's No-Fault insurance law, N.Y. Ins. Law §§ 5101, *et seq.*, requires automobile insurers such as State Farm to pay for health service expenses incurred by automobile accident victims.  Following an automobile accident injury, victims may consult a physician who, as appropriate, may prescribe and perform various modalities of treatment, including pain management medical services.  In order to minimize the administrative and financial burden on accident victims, such patients are permitted to assign their No-Fault benefits to their medical providers, including pain management specialists, such as Defendant, Dr. Kotkes.  Dr. Kotkes may then request payment for the medical services directly from No-Fault insurers.

Enacted nearly forty-five years ago, the "No-fault" law was designed to provide automobile accident victims with "prompt uncontested statutorily assured payment of 'first party benefits' (i.e., such as reimbursement for medical expenses and loss of income) ... for basic economic loss without the necessity of recourse to the courts." Medical Society of the State of New York v. Levin, 185

Misc.2d 536, 712 N.Y.S.2d 745, 747 (Sup. Ct. N.Y. 2000) aff'd. 280 A.D.2d 309, 723 N.Y.S.2d 133 (1st Dept. 2001).  In exchange, victims lost their common law right to sue for damages for personal injuries unless they could prove a serious injury, as defined by the statute.

The law was intended to remove the vast majority of claims arising from vehicular accidents from the sphere of common-law tort litigation, and to establish a quick, sure, and efficient system for obtaining compensation for economic loss suffered as a result of such accidents.  See  Walton v. Lumbermens Mut. Cas. Co., 88 N.Y.2d 211, 644 N.Y.S.2d 133, 135 (1996); See also Presbyterian Hosp. in the City of New York v. Md. Cas. Co., 90 N.Y.2d 274 (1997); Aetna Life and Cas. Co. v. Nelson, 67 N.Y.2d 169 (1986).

The state Court of Appeals has repeatedly observed, therefore, that "the no-fault law does not codify common-law principles; it creates new and independent statutory rights and obligations in order to provide a more efficient means for adjusting financial responsibilities arising out of automobile accidents." Aetna Life, supra, 67 N.Y.2d at 175 (citing Montgomery v. Daniels, 38 N.Y.2d 41, 45, 378 N.Y.S.2d 1 (1975)). Accordingly, it has refused to read rights or obligations into the no-fault law or regulations that were not *expressly* created by the legislature or the Superintendent.

### C. State Farm's Complaint

State Farm alleges two categories of claims. First, State Farm seeks to recover all payments made for patient claims on medical services performed by Dr. Kotkes and for which State Farm made payments. These claims have been properly adjudicated either voluntarily by State Farm or through the No-Fault arbitration or litigation process. As such, State Farm was afforded ample opportunity to address any and all medical necessity issues with respect to each patient's No-Fault claim or case. State Farm's Complaint focuses on several medical procedures: percutaneous discectomy, discography, epidurography, Intradiscal Electrothermoplasty ("IDETs"), epidural

steroid injections ("ESIs") and trigger point injections. These procedures are commonly used by Dr. Kotkes for his patients as well as by similarly situated pain management specialists in this region. State Farm makes sweeping generalizations with regard to the use of these medical procedures. In doing so, State Farm ignores that the patient population that presents to Dr. Kotkes for treatment after a motor vehicle accident is largely homogenous and ascribes a nefarious motive to Dr. Kotkes for treating such homogenous population using a treatment plan that he, consistent with the authority conferred on him pursuant to the law through his medical licensure, developed in his own independent medical judgment. In essence, State Farm desires to usurp Dr. Kotkes's medical judgment and financially coerce him, through this litigation, into disregarding what he believes is beneficial to his patients and adopting a treatment plan that State Farm deems financially suitable for its investors.

Second, State Farm seeks a declaratory judgment against Dr. Kotkes to prevent further payments for any patients seen by Dr. Kotkes who are eligible for No-Fault payments through their State Farm policies. Any such prohibition would include medical treatment services already performed, but not yet paid and patients for whom no medical treatment has yet been rendered.

State Farm also alleges "fraud" without pleading any affirmative act committed by Dr. Kotkes. State Farm does not even attempt to satisfy its burden of pleading facts to establish that it acted with due diligence to discover the alleged fraud, nor that it actually discovered conduct that constitutes fraud. Instead, State Farm asserts various allegations regarding the medical necessity of Dr. Kotkes's medical treatment of various patients. In essence, State Farm is critical of Dr. Kotkes treatment style, alleging that he does not provide medical treatment on a case-by-case basis, but that his medical approach is to provide "unnecessary interventional procedures." This factual assertion is not supported by the facts and is simply not accurate. However, assuming, arguendo, State Farm's allegations had any merit, they do not constitute a

9

basis for fraud. The allegations only speak to the manner in which Dr. Kotkes provides pain management services to his patients.

### D.     State Farm's Specific Allegations

A copy of State Farm's Complaint is attached as Exhibit "A." In paragraphs 28-35, State Farm purports to lay out the factual basis for its accusation that Dr. Kotkes has engaged in an "unlawful and fraudulent Treatment Protocol scheme." Complaint at ¶28.

Dr. Kotkes treated the subject patients after other attempts at conservative treatment failed to alleviate the patients' symptoms. State Farm's allegations are not specific and attempt to characterize the normal pain management practice for a homogenous patient population with similar complaints as establishing evidence of fraud.

### E.     Implications of State Farm's Relief Sought

In New York, medical providers must attempt to collect from automobile insurance carriers, like State Farm, on a timely basis. Each of the underlying insureds who received treatment from the hospital visits and other conservative treatment providers submit their claims under No-Fault. Once the insured's State Farm policy is exhausted, State Farm will no longer have to pay Dr. Kotkes or any other provider for medical services. Given that many policy limits are limited to $50,000, the policies can be exhausted quickly. As a result, medical providers must prosecute their claims for reimbursement expeditiously. Crucially, if the pending claims or No-Fault disputes in arbitration or court are put on hold, it is very likely that Dr. Kotkes will never receive payment for the services provided.

State Farm seeks a declaratory judgment for hypothetical future treatment, which is nothing more than a thinly disguised ploy to obtain the Court's permission to engage in unfair insurance claims practices during the duration of this litigation. A patient's right to treat with a

provider of their choice is sacrosanct. Indeed, neither applicable insurance laws/regulations nor the underlying policy allow State Farm to dictate to its insureds the provider with whom they may treat or preclude them from treating with any provider.  State Farm insureds pay premiums to State Farm for policies under which State Farm is required to cover any medical bills they incur for treatment they received from any medical provider, as a result of an automobile accident. By seeking a declaratory judgment, State Farm is attempting to misuse the judicial system as an end-run around the patient-choice protections set forth in applicable insurance laws/regulations and the underlying policy. Aside from the detrimental impact this would have on patients, who seek treatment from Dr. Kotkes, State Farm is attempting to frustrate Dr. Kotkes's ability to receive payment for his services to his patients to leverage settlement on its terms and based on what State Farm deems to be an appropriate treatment plan.

## LEGAL ARGUMENT

### I.   STANDARDS UNDER FRCP 12(b)(6) AND RULE 9(b)

A complaint will survive dismissal only if its well-pled facts "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To satisfy this standard, the Complaint must contain enough "factual content ... to draw the reasonable inference that [D]efendant[s are] liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). Allegations that raise only the "mere possibility of misconduct," or tender "naked assertion[s]" devoid of "further factual enhancement," fall short. Id. at 678–79 (citations omitted). A complaint that pleads facts "'merely consistent with' a defendant's liability, [] 'stops short of the line between possibility and plausibility of 'entitlement of relief.'" Id.

Although the allegations of a complaint are given deference on a motion to dismiss pursuant to Rule 12(b)(6), the Court need not accept legal conclusions, labels or strained

inferences. See Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 717 (2d Cir. 2013). Also, the court need not accept allegations as true when they are clearly controverted by controlling agreements. Spinelli v. NFL, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015)(granting motion to dismiss because plaintiffs' conclusions were contradicted by the actual terms of the agreement at issue).

FRCP 9(b) provides that the circumstances of fraud must "be alleged with particularity," requiring "reasonable detail as well as the allegations of fact from which a strong inference of fraud reasonably may be drawn." National Council of Young Israel v. Wolf, 963 F. Supp. 276, 281 (S.D.N.Y.1997).  To meet the Rule 9(b) standard, the Second Circuit has held that a claim alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 25 (2d Cir. 2016).  In addition, the plaintiff must plead the defendant's mental state, alleging facts "that give rise to a strong inference of fraudulent intent." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 171 (2d Cir. (2015).  The purpose of Rule 9(b) is "to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit."  Exelis, 824 F.3d at 25.

## II.     PLAINTIFF FAILED TO STATE A CLAIM FOR A DECLARATORY JUDGMENT, COMMON LAW FRAUD OR UNJUST ENRICHMENT

### A.     Failure to State a Claim for Declaratory Judgment

The Complaint fails to provide any basis to allege a declaratory judgment under federal or common law.  The Complaint is devoid of facts documenting that State Farm is entitled to a declaratory judgment given the palpable lack of specificity for the underlying allegations of common law fraud.  The conclusory nature of these allegations is also insufficient to support

any inference of fraudulent intent.   Since common law fraud requires a material misrepresentation with an intent to deceive, State Farm must allege that each defendant intended to engage in the conduct with actual knowledge of the illegal activities to satisfy the necessary mental state. See Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395, 402 (2d Cir. 2015)(requiring a showing of material misrepresentation or omission of fact which the defendant knew to be false).

Here, of course, the allegations fail to support any inference that Dr. Kotkes' medical treatment, billing and/or medical records were materially false or fraudulent, without any reasonable or good faith basis to believe that they may be medically necessary or beneficial to the patient.

Count One of State Farm's Complaint seeks declaratory judgment on claims "through the pendency of this litigation." See Complaint ¶137. In other words, State Farm has decided that it will (and has already started to) deny all bills submitted by Dr. Kotkes regardless of the injuries suffered by its insureds or the treatment rendered and requests the Court's advisory opinion that this will later be found to have been legal. This is not the purpose of a Declaratory Judgment.

The Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA") "provides that a federal court may – in a case of actual controversy and upon the filing of an appropriate pleading – 'declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" 28 U.S.C. § 2201 (a).

However, declaratory judgments do not exist to resolve non-particularized disputes or provide advisory opinions.  The dispute as to whether State Farm has a legal right to deny a particular individual claim should not be resolved through the broad non-claim specific declaratory judgments State Farm is seeking in its Complaint.

For "a declaratory judgment to issue, there must be a dispute which calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon

13

established facts." <u>Ashcroft v. Mattis</u>, 431 U.S. 171, 172 (1977) To obtain declaratory relief, State Farm must allege more than a hypothetical that, because patients with similar injuries have received similar treatment (a common occurrence in the medical profession), all individual treatments provided by Dr. Kotkes have never been nor will be medically necessary.

Before State Farm would be entitled to a judgment that its denial of bills in any claim was justified, the Plaintiff would have to prove that the specific medical treatment provided to the specific individual patient was medically unnecessary. Obviously, such a showing cannot be made in a global, non-patient specific, non-claim specific declaratory judgment action before the treatment even occurs.

No declaratory judgment can be issued in connection with future injuries and future medical treatment, which are hypothetical claims at best.  State Farm improperly attempts to declare that each and every medical treatment, which *will* be provided by Dr. Kotkes, should be presumed in as medically unnecessary regardless the patient's medical presentation and/or benefit. <u>See e.g</u>. <u>Levinson-Roth v. Parries</u>, 872 F. Supp. 1439, 1446 (D. Md. 1995) ("A hypothetical threat is not enough.")(internal citation omitted).

In a landmark decision, <u>Presbyterian Hospital in the City of N.Y. a/a/o DiGuisto v. Maryland Casualty Co., supra</u>, 90 N.Y.2d at 282, the Court of Appeals declared that "an insurer may be precluded from interposing a statutory exclusion defense for failure to deny a claim within 30 days as required by Insurance Law § 5106(a)." It explained that the strict construction of the "30-day rule" was intended as a "trade-off of the no-fault reform [which] still allows carriers to contest ill-founded, illegitimate and fraudulent claims, but within a strict, short-leashed contestable period and process designed to avoid prejudice and red-tape dilatory practices." <u>Presbyterian</u>, 90 N.Y.2d at 285.

However, in a counterpart decision on the same date, the Court also held that an untimely disclaimer or denial does not prevent the insurer from raising a lack of coverage defense "premised

14

on the fact or founded belief that an alleged injury does not arise out of an insured incident." Central General Hospital a/a/o Mandrels v. Chubb Group of Ins. Cos., 90 N.Y.2d 195, 199 (1997). Thus, even if the insurer fails to pay or deny a claim within thirty days of its submission, it may still raise a lack of coverage defense.

State Farm's action for declaratory judgment is quite clearly a request for permission to engage in unfair claims settlement practices by circumventing the 30-day rule and attempting to institute a blanket prohibition against Dr. Kotkes for his method of treatment. However, it is an unfair claims settlement practice for State Farm to deny a claim without an individualized analysis and specific particularized determination of each claim.

**B.  Failure to State a Claim for Common Law Fraud**

Under New York law, to state a claim for fraud, a plaintiff must demonstrate "(1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395, 402 (2d Cir. 2015).

The Complaint asserts Plaintiffs' grand conspiracy theories against Dr. Kotkes but fails to provide rudimentary detail sufficient to comply with FRCP 9(b), Iqbal, Twombly and their progeny.  While strong on bold conclusions, the Complaint is weak on any specificity of fraud.

In short, State Farm alleges fraud in the treatment of State Farm insureds based on simply terming the initial evaluation a "sham" and declaring all procedures as "medically unnecessary". See Complaint at ¶28.  The support for these purely conclusory statements is the finding of "pervasive and non-credible patterns" by State Farm; in essence, State Farm carefully cherry-picked patients and information that fit its narrative to create a statistical pattern it deems as fraudulent.

In the Complaint ¶ 29, State Farm argues that patients received similar diagnoses and similar treatment following the initial examination.  This paragraph completely ignores the fact that the universe of patients was not only reduced to those who were in an automobile accident and received neck and back injuries, but is further limited to those not responding to conservative treatment through physical therapy and chiropractic treatment.

This paragraph also fails to acknowledge that the treatment listed in Plaintiff's chart are only treatment "options" identified at the initial examination.  Complaint, Exhibit 1. These are not the actual treatments administered, but the range of options available for a particular patient.  The Complaint attempts to paint Dr. Kotkes's proposed (and non-rendered) treatment as nefarious. However, a pain management physician's listing of options for patients does not constitute fraud. Again, the Complaint does not offer any support that Dr. Kotkes's diagnosis and treatment is either incorrect or, more importantly, fraudulent.

State Farm admits the gravamen of its entire lawsuit in ¶ 30 of its Complaint, wherein it states that the "frequency and uniformity of these procedure recommendations is not plausible given the type of injuries and the unique circumstances of each Patient."  This is purely a statistical argument and does not point to any medical record or any treatment billed that was not provided. The fact that Dr. Kotkes sees patients with similar symptoms helps explain State Farm's oversimplification and misleading chart.

The Complaint at ¶ 36 contains allegations regarding the initial examinations.  These examinations are initial visits with a report covering the initial opinions and possible treatments suitable for the patient.  It is apparent that State Farm is not satisfied with medical records describing general areas of pain or discomfort and would prefer more specific identifiers.  Such a complaint regarding the administrative practices of Dr. Kotkes is not fraud (as it does not allege any misrepresentation or omission by Dr. Kotkes) and could have been and should have been

16

raised in an individual arbitration contesting payment or in state law litigation. However, such a criticism is not a basis for a common law fraud claim.

For example, regarding this statistical argument, the Complaint at ¶ 40 asserts that "Kotkes also diagnosed 99% of the Patients with radiculopathy in either the lumbar or cervical region, or both." Yet, the only evidence of this assertion is the chart of 86 patients created by State Farm. There is no description of the methodology State Farm used to select these 86 State Farm insureds seen by Dr. Kotkes since 2017. Without any description of the total universe of State Farm insured seen by Doctor Kotkes since 2017 and the methodology to select these 86 patients, any statistical analysis is meaningless. It could be, and likely is, that these 86 are not a random sampling of patients from which no conclusions can be drawn. Additionally, State Farm's reference to a 99% figure is not fraud in the particularity, as it fails to provide notice to Dr. Kotkes as to which of his diagnoses are alleged to be fraudulent.

Throughout the Complaint, State Farm simply declares fraud. In declaring examinations not credible, misleading, and fraudulent, State Farm renders judgment without a single fact. State Farm declares that it is "non-credible" that individuals seeking treatment with Defendant would all have similar injuries or need similar procedures. But the entire purpose for patients being referred to, or seeking Dr. Kotkes's treatment, involves similar injuries and the need for similar treatment. These patients are not seeking physical therapy, nor are they seeking spine surgery. They are seeking intermediary medical treatment to alleviate their pain and discomfort. In sum, the individuals in an automobile accident, who either do not have neck and/or back injuries or respond favorably to conservative treatment, will not seek the care of Dr. Kotkes. The blanket assertion that this demonstrates anything improper or constitutes fraud is non-credible and misleading.

State Farm's allegation that it is statistically unlikely that patients of varying age, medical history, subjective complaints, and treatment history should have the same or similar procedures

is insufficient as a matter of law to state any claim for fraud.  In essence, State Farm is claiming that Dr. Kotkes diagnosis and treatment recommendations could not all be true, and, therefore, must all be false.

In addition, the Complaint attempts to draw inferences of fraud that stretch the bounds of credibility.  In ¶ 46, State Farm alleges that a prognosis of "guarded" for 98% of the sample chosen by State Farm is some form of evidence.  Again, this contrived statistic ignores the nature of Dr. Kotkes practice in that he is seeing injured patients who unsuccessfully undergone other treatment. At the initial visit, before he has utilized any treatment methods, a prognosis of "guarded" is likely the only reasonable and logical prognosis.  To paint such a prognosis as evidence of fraud is inaccurate and misleading.

The Complaint at ¶ 47 attempts to draw conclusions of fraud based on Dr. Kotkes' determination that each patient's condition was "casually related" to a recent automobile accident. This attempt to infer fraud is strained at best.  Dr. Kotkes' initial examination reports, for all patients who were identified on the exhibits to the Complaint, include a history of present illness. Logically, all patients would report to Dr. Kotkes that the onset of pain occurred on the date of the auto accident being that the impetus for their visit with Dr. Kotkes is their injury from the auto accident.  Further, every patient reported that they do not have a history of back problems in the past. Therefore, it is logical for Dr. Kotkes' initial report to contain the conclusion that each patient's condition was casually related to the automobile accident.  State Farm did not allege that Dr. Kotkes misrepresented the patient's history of present illness or the patient's claim that they had no prior back problems; rather, State Farm merely disagrees with Dr. Kotkes's conclusion as to causality. However, a disagreement as to judgment is not a basis for a claim for common law fraud.

State Farm is in possession of thousands of pages of records from the treatment of patients by Dr. Kotkes. These records span hundreds of patients across years of treatment.   Yet, the

18

Complaint fails to list a single misrepresentation or false statement in any treatment record. State Farm cannot point to any examination billed by Defendant that did not occur, any treatment that was not rendered or an entry that is not accurate.

Although the Complaint boldly offers that the medical services were provided "as a consequence of Kotkes' unlawful and fraudulent Treatment Protocol scheme designed to exploit the Patients' No-Fault Benefits" (Complaint, at ¶ 28), any such submissions were done in accordance with existing No-Fault protocol. Dr. Kotkes provided the medical services, submitted proper billings for the medical services, and maintained records for the provided medical services, all in accordance with New York No-Fault protocols, and all without any allegation of general falsity, much less an allegation with particularity.

Thus, State Farm fails to provide Dr. Kotkes proper notice of the particular medical records or notations that were fraudulent, since there is no specific allegation in the Complaint averring to any such statement. Similarly, State Farm has not provided Dr. Kotkes notice of any submission for payment that constitutes a misrepresentation, since the Complaint broadly concludes that all treatment and records are fraudulent since they were part of a "scheme."

State Farm's Complaint does not allege a single specific misrepresentation. Rather, it provides contrived statistics claiming they give rise to suspicions about the treatment provided over the course of five years. Unfortunately for State Farm, its self-serving and vague suspicions do not provide the necessary requirements to plead fraud. Statistics over time are not representations, much less representations that can be intentionally false.

The obvious problem with alleging fraud based on statistics is that it does not provide notice to Dr. Kotkes of any specific misrepresentation. This is starkly demonstrated by looking again at the accusations in Complaint at ¶ ¶ 28 through 30, which purport to set out the factual basis of the alleged "fraudulent scheme."

19

The Complaint states that Dr. Kotkes "conducted sham initial evaluations that did not legitimately examine or diagnose the Patients or properly assess the Patients' medical histories and prior treatment." Complaint at ¶ 28. This is a mere conclusory statement with the purported evidence represented by a listing of 86 patients seen by Dr. Kotkes over the course of five years. There is simply nothing in the complaint alleging that these individuals were not seen for an initial examination or that the patients did not give their prior medical histories to Doctor Kotkes. There is no allegation that the code billed for these initial examinations does not match the time spent with the patient or the complexity of the patient's injuries. Rather than provide such specificity and properly apprise Dr. Kotkes of the fraudulent statements, allegedly contained in these initial examinations and billings, State Farm simply declares them a "sham." Complaint at ¶28.

In the end, even if State Farm is afforded the full benefit of accepting all accusations in the Complaint as true, there is nothing more than selective and manipulated statistics based upon a retrospective statistical analysis of some patients' treatment by Dr. Kotkes. Even assuming that State Farm's statistics are accurate, the Complaint amounts to a dispute as to medical judgment and does not sound in fraud. State Farm's methodology and disagreement with Dr. Kotkes as to which protocol is more appropriate for his patients would not survive the requirements of FRCP 9(b) and State Farm's Complaint must, therefore, be dismissed in its entirety.

## C.      Failure to State a Claim for Unjust Enrichment

In New York, the elements of an unjust enrichment claim are "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 182 (2011).

In the present case, State Farm paid Dr. Kotkes for services that he actually rendered. Nothing in the Complaint even suggests that Dr. Kotkes did not provide the services to State Farm insureds.  It is also not disputed that the patients were State Farm insured who were due no-fault benefits after suffering injuries in automobile accidents.  Any payments State Farm made to Dr. Kotkes were those contractually owed by State Farm for the care of its insureds.

It would be inequitable, and a financial windfall for State Farm, for State Farm to avoid payment for services Dr. Kotkes rendered to its insureds based on mere conclusory allegations that Dr. Kotkes's services were not medically necessary.  In essence, the court would sanction State Farm's avoiding the payment of benefits on behalf of its insureds from whom it collected premiums specifically intended to secure the payment of such benefits.  As the Complaint does not dispute Dr. Kotkes's provision of the underlying services, it is State Farm who would be unjustly enriched if the Court were to allow to recover payments from Dr. Kotkes for his services to the applicable State Farm insured, especially since it is highly doubtful that State will refund its insured the portion of their premiums that is allocable to the medical bills for which it secured a refund.

4855-1869-4970, v. 1

**CONCLUSION**

State Farm has failed in every respect required to plead its fraud claims with specificity sufficient to provide adequate notice to the Defendants for common law fraud and unjust enrichment. State Farm's request for declaratory judgment on hypothetical claims is a thinly disguised attempt to obtain the Court's permission to engage in unfair claims practices and to financially coerce Defendants into a settlement that enables State Farm to further its profit motives.

For all of these reasons, it is respectfully requested that the Court enter an Order for dismissal of the Complaint.

Dated:  October 17, 2022

MANDELBAUM BARRETT PC
*Attorneys for Defendants*
*Herschel Kotkes, M.D., P.C. and*
*Herschel Kotkes, M.D.*

By:___*/s/ Andrew R. Bronsnick*___
     ANDREW R. BRONSNICK

570 Lexington Avenue
New York, NY  10022
t. 212.776.1834
Email:  abronsnick@mblawfirm.com

*Please reply to Roseland office*
3 Becker Farm Road, Suite 105
Roseland, NJ  07068
P. 973.327-6611