UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company<br><br>Plaintiffs,<br><br>v.<br><br>Herschel Kotkes, M.D., P.C., Herschel Kotkes, M.D.,<br><br>Defendants. | MEMORANDUM & ORDER<br><br>No. 22-cv-03611-NRM-RER |

NINA R. MORRISON, United States District Judge:

Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, "State Farm") bring this action against Defendants Herschel Kotkes and Herschel Kotkes, M.D., P.C. ("Kotkes"), alleging that Dr. Kotkes defrauded State Farm by submitting hundreds of fraudulent bills for no-fault insurance charges on behalf of insured patients who were involved in automobile accidents. State Farm alleges common law fraud and unjust enrichment, seeking damages for benefits paid under no-fault insurance policies to Kotkes. Compl., ECF No. 1, ¶ 146, 152. State Farm also seeks a declaratory judgment establishing that, among other things, it is not obligated to pay unpaid, pending claims submitted by Kotkes. Compl. ¶ 137–40.

Presently before the Court are (1) Kotkes's motion to dismiss the complaint for failure to state a claim under Rule 12(b)(6), ECF No. 17, and (2) State Farm's

motion for a preliminary injunction to stay individual proceedings that have been
commenced by Kotkes to collect no-fault benefits from State Farm, and to enjoin
him from initiating such proceedings during the pendency of this litigation.  ECF
No. 19.  For the reasons stated below, Kotkes's motion to dismiss is DENIED and
State Farm's motion for a preliminary injunction is GRANTED in full.

## I.    Background

### A. New York's No-Fault Insurance Scheme

Under New York Law, an automobile insurer must provide no-fault
insurance benefits to the individuals they insure ("insureds") for necessary
healthcare expenses resulting from automobile injuries, for up to $50,000.  *See* N.Y.
Ins. Law §§ 5101 *et seq*; N.Y. Comp. Codes R. & Regs. tit. 11 §§ 65, *et seq*.  This
legislative scheme is designed to "ensure prompt compensation for losses incurred
by accident victims without regard to fault or negligence, to reduce the burden on
the courts and to provide substantial premium savings to New York motorists."
*Med. Soc'y of State of N.Y. v. Serio*, 100 N.Y.2d 854, 860 (2003) (citation omitted).
Under these laws, no-fault insurers like State Farm "may reimburse patients
without requiring proof of the other driver's fault in an amount up to $50,000,
including for necessary expenses incurred for medical or other professional health
services."  *Gov't Emps. Ins. Co. v. Tolmasov*, 602 F. Supp. 3d 380, 383 (E.D.N.Y.
2022) (citing N.Y. Ins. Law § 5102(a)(1)).  An insured may assign their claim to their
provider, who then bills the insurers directly.  *State Farm Mut. Auto Ins. Co. v.
Parisien*, 352 F. Supp. 3d 215, 221 (E.D.N.Y. 2018).

New York state law creates a "fair claims settlement" procedure for all no-fault claims. No-fault benefits are considered overdue if they are not paid or denied within thirty calendar days from when proof of claim is submitted to the insurer. *See* N.Y. Ins. L. § 5106(a); 11 N.Y.C.R.R. § 65-3.8(c). "After receiving a claim, an insurance company must pay it in full within thirty days, or else incur interest charges at two percent per month." *Gov't Emps. Ins. Co. v. Landow*, No. 21-CV-1440 (NGG) (RER), 2022 WL 939717, at *1 (E.D.N.Y. Mar. 29, 2022). "If an insurer fails to comply with this timeframe, it will be precluded from asserting many (but not all) defenses to coverage, including most fraud-based defenses." *Parisien*, 352 F. Supp. 3d at 221.

### B. Factual Allegations

Defendants in this action are Dr. Herschel Kotkes ("Kotkes") and his medical practice, Herschel Kotkes, M.D., P.C. Kotkes is a pain management specialist, whose practice includes treating insureds who have been involved in automobile accidents. Compl. Ex. 9, ECF No. 1-9, at 5. The insureds assign their policies to Kotkes, who bills State Farm for the treatment purportedly rendered.

State Farm alleges that Kotkes, since at least 2017, has been systematically submitting fraudulent and misleading claims to State Farm. Compl. ¶ 2, 4. State Farm contends that this pervasive fraud is visible when collectively observing the claims that Kotkes submitted to State Farm since 2017. Compl. ¶ 4, 133. State Farm contends that, while individual claims may appear facially legitimate, when viewed in context of the hundreds of claims submitted since at least 2017, it is

3

apparent that Kotkes has made identical diagnoses and prescribed nearly identical treatments for all of his patients, regardless of any individual characteristics such as age, medical history, physical condition and limitations, or responsiveness to conservative treatment.  Compl. ¶ 23.

In its complaint, State Farm cites frequently to a chart analyzing eighty-six patient records—randomly selected claims that constitute a little over 10% of the 745 claims Kotkes submitted to State Farm since 2017.  Opp'n to Mot. to Dismiss, ECF No. 17-2 at 9; Compl. Ex. 1, 2, ECF Nos. 1-1, 1-2.  This analysis reveals, according to State Farm, that, among other things, Kotkes almost always described patient complaints in the same way (as non-specific neck and/or low back pain), Compl. ¶ 36, diagnosed 99% of patients with radiculopathy in either the lumbar or cervical region, or both, along with "intervertebral disc displacement" in the corresponding region, Compl. ¶ 40, but without specifying the particular location on the spine.   Compl. ¶¶ 42–44.  State Farm contends, however, that "radiculopathies at one or more level are rare in motor vehicle accident victims"  Compl. ¶ 41 (citing "a large-scale, peer-reviewed 2009 study . . . published in Muscle & Nerve, the official journal of the American Association of Neuromuscular & Electrodiagnostic Medicine").  The random sample of eighty-six patients also reveals that Kotkes provided the same prognosis for 98% of those he treated, Compl. ¶ 46, and recommended the same combination of treatment methods for nearly all patients. Compl. ¶ 53.  Indeed, State Farm alleges Kotkes frequently billed for (and presumably performed) two procedures, IDETs (Intradiscal Electrothermoplasty)

and percutaneous discectomies, that he performed at the same time.  Compl. ¶ 94.

In fact, 96% of patients who were recommended a percutaneous discectomy were

also recommended an IDET.  Compl. ¶ 96.  However, State Farm avers that "the

medical indications for percutaneous discectomies and IDETs render them mutually

exclusive"—if a patient has a certain set of symptoms, he is a candidate for one

procedure but not the other, and "cases where both procedures are indicated would

be non-existent, or at least extraordinarily uncommon."  Compl. ¶ 95.

State Farm also points to the individual medical records of several patients

as examples of Kotkes's allegedly fraudulent practices.  In one of the several

examples that State Farm provides, Kotkes immediately recommended that a

patient, R.A., receive three invasive courses of treatment: an ESI, trigger point

injection, and percutaneous discectomy.  Compl. ¶ 55.  A percutaneous discectomy

and IDET were performed only eight days later, without beginning with more

conservative treatment, such as injection therapy.  Compl. ¶ 55.  State Farm also

points to examples from individual patient records where Kotkes billed for an IDET

and a percutaneous discectomy, which were performed at the same time even

though these two procedures are mutually exclusive.  Compl. ¶¶ 92–96.  And,

although an IDET typically takes 25 minutes for an experienced practitioner to

perform, the medical records reveal that patient R.A.'s combined procedures took

two minutes in the lumbar area and six minutes in the cervical area.  Compl. ¶ 97

(citing three other examples from patient records where combined procedures lasted

between three and seven minutes).

The complaint further points to Kotkes's own testimony that even he did not believe some of the procedures he billed for (and presumably performed) were medically necessary, nor did he believe that the documentation of prior conservative treatment was necessary.[1]  For example, Kotkes testified that "it is not important to note a prior or concurrent provider or the types of conservative treatment rendered by such provider before recommending surgery, the only prerequisite to take into consideration is that the patient is in pain," and that if "they still have pain, then that would be enough information" to proceed to surgery.  Compl. ¶ 48 (citing Ex. 9 at 81:2-82:23).  Additionally, Kotkes also previously testified he thought the discograms—a particular procedure he performs—have limited value (and State Farm alleges that their medical utility is "heavily debated"), but he performed and billed for one "immediately prior to all cervical and lumbar percutaneous discectomy procedures as a matter of course."  Compl. ¶ 80.  And, as another example, State Farm points to Kotkes's testimony that he performs IDETs at the same time he inserts the needle into the disc during a percutaneous discectomy, even though these procedures are mutually exclusive.  Compl. ¶ 95 (citing Ex. 9 at 164:6–15).

State Farm asserts three causes of action: for common law fraud and unjust enrichment, under which it seeks damages for claims already paid to Kotkes, Compl. ¶¶ 141–52, and for a declaratory judgment, under which State Farm seeks a judgment declaring that Kotkes is not entitled to reimbursement for claims

---

[1] At oral argument, State Farm represented that this testimony was from an examination under oath taken in an individual no-fault collection action Kotkes brought in state court—a representation that Kotkes did not dispute.

6

submitted to State Farm that have not been paid to date and are unpaid through the pendency of this litigation.  Compl. ¶ 135-40.

### C.  Procedural History

State Farm filed the complaint on June 17, 2022, and Kotkes timely moved to dismiss.  While the motion to dismiss was under consideration, State Farm filed a motion for a preliminary injunction on March 29, 2023, and shortly thereafter this case was transferred to the undersigned.  The Court held oral argument on both motions on June 29, 2023.

## II.  Kotkes's Motion to Dismiss

Kotkes moves to dismiss each cause of action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the district court must (1) accept as true all the plaintiff's factual allegations and (2) draw all reasonable inferences in the plaintiff's favor.  *See Teichmann v. New York*, 769 F.3d 821, 825 (2d Cir. 2014).  A complaint must, however, plead "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully").

At the motion to dismiss stage, the Court accepts as true the well-pled factual allegations for purposes of deciding Kotkes's motion to dismiss. *See N.Y. Pet Welfare Ass'n, Inc. v. City of N.Y.*, 850 F.3d 79, 86 (2d Cir. 2017).  However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctr. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (citations omitted).  In considering a motion to dismiss for failure to state a claim, courts "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

It is well-settled that an insurer who pays no-fault benefits "and subsequently discovers fraud may bring an action for damages," and "may also bring an action for a declaratory judgment that it is not liable for any unpaid claims where the provider has committed fraud or breached applicable no-fault regulations," as State Farm does here. *Parisien*, 352 F. Supp. 3d at 221–22 (collecting cases).  However, Kotkes argues that State Farm fails to state a claim as to each count.  For the reasons explained below, the Court disagrees.

### A. Common Law Fraud

Under New York law, to state a claim for fraud, a plaintiff must demonstrate "(1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which

the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015).

The heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to claims for fraud. *Id.* at 402–03. Rule 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In practice, this rule "requires that the plaintiff (1) detail the statements (or omissions) that the Plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Putnam Advisory Co.*, 783 F.3d at 402-03 (citation omitted). The purpose of Rule 9(b) is to put defendants "sufficiently on notice as to the nature of the scheme, when it occurred, and who took part." *Landow*, 2022 WL 939717, at *5.

Kotkes argues that State Farm fails to satisfy this heightened pleading standard and does not plead fraud with specificity because the complaint relies solely on "contrived" and "manipulated statistics" to support its allegations of fraud—specifically, the claims chart attached as Exhibit 1 to the Complaint—and "fails to list a single misrepresentation or false statement in any treatment record." Mot. to Dismiss, ECF No. 17-1, at 19–20.[2] Kotkes appears to argue that statistics

---

[2] Kotkes also criticizes State Farm for "carefully cherry-pick[ing]" the patients it included in its chart of 86 claims "to create a statistical pattern." Mot. to Dismiss at 15. However, State Farm clarifies in its opposition that the chart of 86 claims, which it refers to as a "treatment summary," is "a list of randomized claims . . . taken from medical records and bills submitted by defendants." Opp'n to Mot. to Dismiss at 9. Since Kotkes has not pointed to nothing more than speculation to contradict State Farm's assertion that this list of 86 patients is, in fact, a list

alone demonstrating similarities of treatment across a patient base cannot satisfy Rule 9(b). *See id.* at 15–16. Kotkes contends that a complaint that relies on statistics alone cannot succeed, since such a complaint would effectively assert that all claims must be medically unnecessary because they could not be this similar, rather than pointing to particular fraudulent statements. *See id.* at 18–20.

But State Farm does not rely on statistics alone here. True, State Farm highlights the similarities in the course of treatment across the representative sample of patients treated. *See* Compl. ¶¶ 40, 46, 53, 56. Yet State Farm also cites numerous examples taken directly from patient records supporting its allegations that Kotkes was systematically billing for medically unnecessary treatments, representing that the treatments were eligible for reimbursement when they were not, and seeking to take advantage of New York's no-fault benefits scheme. For example, the complaint points to specific patient records showing that patients were provided (and Kotkes billed for) two procedures for which the medical indicators are mutually exclusive, Compl. ¶¶ 95–97, and procedures that were performed simultaneously when they should only be performed sequentially after allowing time to see if one procedure would be effective on its own. Compl. ¶ 61–62, 118. State Farm highlights examples from patient records of these procedures being performed, together, over the course of three to seven minutes, when just one

randomly selected from the more than 700 patients for whom Kotkes has submitted claims to State Farm, at this stage the Court accepts State Farm's representation of its methodology.

procedure typically takes an experienced professional twenty-five minutes to perform.  Compl. ¶¶ 91, 97.

Perhaps most crucially, State Farm points to Kotkes's own testimony, from an examination under oath in a state court collection action, where he testified, for one, that he does not believe that certain procedures are medically valuable, but that he performs them as a matter of course.  Compl. ¶ 80–81.  Kotkes also testified that it is his practice to perform a percutaneous discectomy and an IDET—two mutually exclusive procedures—at the same time and using the same needle. Compl. ¶ 95.  Perhaps emblematic of State Farm's allegations is Kotkes's additional testimony that "it is not important to note a prior or concurrent provider or the types of conservative treatment rendered by such provider before recommending surgery, the only prerequisite to take into consideration is that the patient is in pain," and that if "they still have pain, then that would be enough information" to proceed to surgery.  Compl. ¶ 48 (citing Ex. 9 at 81:2–82:23).

Courts in this district and elsewhere have held that, where insurers provide specific factual allegations of fraudulent activity in addition to statistical analysis, they adequately plead fraud.  *See, e.g.*, *Landow*, 2022 WL 939717, at *5 ("Here, however, Plaintiffs do not present the court with mere statistical analysis. [They provide] . . .  factual allegations of specific, dated examples for each type of fraudulent activity."); *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 372–73 (E.D.N.Y. 2012) ("[Allstate] provides several representative examples of the thousands of claims at issue in this case [and] sets forth facts specifying the ways in

11

which [fraud was purportedly perpetrated.] Additionally, Allstate attaches to its Complaint a series of charts that include each of the charges submitted by the defendants that it believes were fraudulent . . . Under the circumstances, the specificity requirement of 9(b) requires no more . . . ."). Here, State Farm has adequately pled that Kotkes made material misrepresentations or omissions of fact. *See Putnam Advisory Co.*, 783 F.3d at 402.

The second and third elements of common law fraud—that the defendant knew that its statements were false and made them with the intent to defraud, *see id.* —are often addressed together. *See, e.g.*, *Gov't Emps. Ins. Co. v. Badia*, 13-cv-1720 (CBA) (VMS), 215 WL 1258218, at *15 (E.D.N.Y. Mar. 18, 2015). Knowledge and intent "may be averred generally," Fed. R. Civ. P. 9(b), but the facts alleged must "give rise to a strong inference of fraudulent intent. *Badia*, 2015 WL 1258218, at *15 (quoting *Lerner v. Fleet Bank, N.A.*, 450 F.3d 273, 290 (2d Cir. 2006)). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show the defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner,* 459 F.3d at 290–91. State Farm adequately alleges that Kotkes had motive to commit fraud: to gain a financial benefit of hundreds of thousands of dollars in insurance payments by submitting claims to State Farm. Compl. ¶¶ 89, 94, 98–99; *see Badia*, 2015 WL 1258218, at *15; *Lyons*, 843 F. Supp. 2d at 373 (holding that the requirement was met by allegations that defendants gained money through the alleged fraud, showing motive). State Farm

also adequately alleges that Kotkes had opportunity to commit fraud, specifically that Kotkes could submit claims to State Farm that allegedly misrepresented the necessity of certain treatments or inflated the bills for certain treatments. *See, e.g.*, *Allstate Ins. Co. v. Avetisyan*, 17 CV 4275 (RPK) (RML), 2021 WL 1227625, at *6 (E.D.N.Y. Mar. 5, 2021) (emphasizing that a provider had "opportunity to receive [monetary] reimbursements by submitting fraudulent claims to plaintiff") *report and recommendation adopted*, No. 17-CV-4275 (RPK) (RML), 2021 WL 1224101 (E.D.N.Y. Mar. 31, 2021).

Finally, State Farm has adequately pled that it reasonably relied on Kotkes's misrepresentation and was injured as a result. *See Putnam Advisory Co.*, 783 F.3d at 402. State Farm alleges that it relied on the facially valid claims Kotkes submitted and, consequently paid at least $550,000 in damages otherwise not reimbursable. Compl. ¶¶ 126-30. Taking these allegations as true, State Farm has shown "a reasonable reliance on defendants' misrepresentations, which caused injury to plaintiffs." *Avetisyan*, 2021 WL 1227625, at *6; *see also Landow*, 2022 WL 939717, at *7.

In sum, State Farm has alleged the elements of common law fraud with the requisite specificity to satisfy Rule 9(b)'s heightened pleading requirements. State Farm has adequately and plausibly alleged that Kotkes made fraudulent statements in submitting the claims at issue. State Farm alleges fraudulent knowledge and intent by showing Kotkes's motive and opportunity to submit fraudulent claims to take advantage of New York's no-fault insurance scheme. And

13

State Farm has clearly alleged that it relied on Kotkes's misrepresentations and was injured as a result.  As such, common law fraud is sufficiently pled and Kotkes's motion to dismiss the common law fraud count is DENIED.

### B. Unjust Enrichment

Kotkes also moves to dismiss State Farm's unjust enrichment count.  Unjust enrichment is "a New York common law quasi-contract cause of action," which requires that a plaintiff establish "(1) that the defendant benefitted; (2) at plaintiff's expense; and (3) that equity and good conscience require restitution." *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).

Here, State Farm has sufficiently alleged that Kotkes benefitted at State Farm's expense.  The complaint sets forth detailed allegations as to how Kotkes received inflated payments as a result of the scheme to defraud State Farm.  *See supra.*  Courts in this district have held that, in similar no-fault insurance fraud contexts, plaintiffs adequately state a claim for unjust enrichment.  *See, e.g.*, *Gov't Emps. Ins. Co. v. Alrof, Inc.*, No. 11-CV-4028 (SLT) (RER), 2013 WL 9600668, at *6 (E.D.N.Y. July 19, 2013), *report and recommendation adopted sub nom. Gov't Emps. Ins. Co. v. Park Slope Med. & Surgical Supply, Inc.*, No. 11-CV-4028 (SLT) (RER), 2013 WL 5209415 (E.D.N.Y. Sept. 13, 2013); *Gov't Emps. Ins. Co. v. Ajudua*, No. 15-CV-5199 (MKB), 2018 WL 7252961, at *5 (E.D.N.Y. Dec. 18, 2018), *report and recommendation adopted sub nom. Gov't Emps. Ins. Co. v. Lurie*, No. 15-CV-05199 (MKB) (RLM), 2019 WL 276201 (E.D.N.Y. Jan. 22, 2019).

Kotkes's arguments to the contrary are unpersuasive. Kotkes argues that State Farm paid for services that were actually rendered, and as such State Farm was not unjustly enriched. Kotkes overlooks, however, that the gravamen of State Farm's complaint is that such services were medically unnecessary—and therefore not eligible for reimbursement—whether rendered or not. Compl. ¶ 1; *see* Opp'n to Mot. to Dismiss at 18–19. Moreover, State Farm *does* allege that Kotkes billed for services never performed. *See* Compl. ¶¶ 67, 65–66, 81, 89. Similarly, Kotkes's argument that State Farm would benefit from a "financial windfall" if it avoided having to pay Kotkes's claims falls short because State Farm is under no obligation to pay for services that are not medically necessary and/or were not actually rendered.

Accordingly, Kotkes's motion to dismiss the unjust enrichment count is DENIED.

### C. Declaratory Judgment

Finally, Kotkes moves to dismiss State Farm's claim seeking a declaratory judgment that Kotkes has no right to receive payment on any pending claims. In its complaint, State Farm alleges that it is entitled to such a declaration because those claims all derive from Kotkes's scheme to obtain no-fault insurance benefits from State Farm by fraudulent means. State Farm thus requests that the Court enter a judgment declaring that Kotkes has no right to receive payment on any pending claims that are unpaid to date and through the pendency of this litigation. *See* Compl. ¶¶ 138–40.

15

Under the Declaratory Judgment Act, a federal court is authorized to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "To state a claim for a declaratory judgment, 'a plaintiff must allege that there is a substantial controversy between parties with adverse legal interests that is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Landow*, 2022 WL 939717, at *9 (quoting *Gov't Emp. Ins. Co. v. AMD Chiropractic, P.C.*, No. 12-CV-4295 (NG)(JO), 2013 WL 5131057, at *7 (E.D.N.Y. Sept. 12, 2013)).

It is well-established in this district that, where an insurer has not yet paid out no-fault benefits, "the insurer may bring an action for a declaratory judgment that it is not liable for any unpaid claims because the provider has committed fraud or breached applicable No-Fault regulations." *Tolmasov*, 602 F. Supp. 3d at 384 (collecting cases).  As such, "[c]ourts in this district have granted declaratory relief in numerous cases  . . . in similar schemes to defraud insurers for charges that are not permissible under the no-fault law." *Avetisyan*, 2021 WL 1227625, at *10 (collecting cases).

State Farm has established a substantial controversy between the parties: whether Kotkes is entitled to payment on pending claims presented to State Farm, or whether, due to Kotkes's allegedly fraudulent scheme, State Farm is under no obligation to pay.  *See* Compl. ¶ 137; Opp'n to Mot. to Dismiss at 21.  And State Farm has identified numerous claims (and their amounts) that have yet to be paid and would be the subject of declaratory relief.  Compl. ¶ 137 & Ex. 2.

Kotkes argues that to issue a declaratory judgment would amount to an "advisory opinion," on a "non-particularized dispute[]." Mot. to Dismiss at 13. Yet the dispute is particularized here: State Farm points to a list of unpaid claims in Exhibit 2 to its complaint—a declaratory judgment would be specific as to whether State Farm has an obligation to pay those claims. To the extent that Kotkes argues that State Farm seeks a declaratory judgment that services that have yet to be provided will be fraudulent, Kotkes misunderstands the relief State Farm seeks. State Farm does not seek to declare that Kotkes is not entitled *any* future payment from State Farm. State Farm seeks only a declaratory judgment that it has no obligation to pay Kotkes for certain bills already presented, given what it claims is the evidence of fraud that pervades these already-submitted claims for treatment rendered   Compl. ¶ 137; Opp'n to Mot. to Dismiss at 20. Kotkes's motion to dismiss the declaratory judgment claim is DENIED.

***

Accordingly, Kotkes's motion to dismiss is DENIED in full.

## III.   State Farm's Motion for a Preliminary Injunction

State Farm alleges that, as of March 23, Kotkes has initiated 103 arbitrations and 95 state court lawsuits seeking payment on claims that State Farm has refused to pay since uncovering the alleged fraudulent scheme and initiating the instant federal lawsuit. Bistline Decl., ECF No. 19-5, ¶¶ 5–6; *see* Mot. for Prelim. Inj., ECF No. 19-1, at 6. As of March 24, 2023, approximately $1,188,841.32 in unpaid claims was at issue in pending state court litigation and arbitrations, and

$1,787,989.98 of Kotkes's billed-unpaid amount was not yet the subject of pending collections litigation or arbitration.  Bistline Decl. ¶ 9.[3]

New York law permit healthcare providers to bring an action in state court to recover overdue or unpaid no-fault benefits.  *See Viviane Etienne Medical Care, P.C. v. Country-Wide Ins. Co.*, 25 N.Y.3d 498, 506 (N.Y. 2015).  Similarly, "insurers are required to include a clause in their policies allowing the claimant to seek arbitration of their claims for no-fault benefits."  *Parisien,* 352 F. Supp. 3d at 221 (citing N.Y. Ins. L. § 5106(b); 11 N.Y.C.R.R. § 65-1.1(a), (d)).  Kotkes has availed himself of both options.

State Farm moves to (1) stay all pending collection arbitrations; (2) stay all current no-fault insurance collection actions in state court; and (3) enjoin Kotkes from commencing any additional arbitrations or state court collection proceedings— all until the resolution of this federal action.  Mot. for Prelim. Inj. at 1. Additionally, State Farm requests to be relieved from its obligation to post a bond for the injunction.  *Id.* at 17.  For the reasons stated below, State Farm's motion is GRANTED.

### A. Analysis

A party seeking a preliminary injunction must "demonstrate (1) irreparable harm absent injunctive relief; and (2) 'either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a

---

[3] At oral argument, State Farm stated that Kotkes had initiated additional collection proceedings since the motion for a preliminary injunction was filed. According to State Farm, as of June 29, 2023, Kotkes had initiated 147 arbitrations and 99 lawsuits in total.  Kotkes did not dispute this figure.

balance of hardships tipping decidedly in the plaintiff's favor.'" *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010) (quoting *Almontaser v. New York City Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008)).

Applying these factors, a substantial number of courts in this district have awarded preliminary injunctions to insurers under similar circumstances to those alleged here. *See, e.g.*, *Parisien*, 352 F. Supp. 3d at 233; *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013); *Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F. Supp. 2d 243, 264 (E.D.N.Y. 2012); *Gov't Emps. Ins. Co. v. Cean*, No. 19-cv-2363 (PKC) (SMG), 2019 WL 6253804, at *4 (E.D.N.Y. Nov. 22, 2019); *Gov't Emps. Ins. Co. v. Mayzenberg*, 17-cv-2802, 2018 WL 6031156, at *5 (E.D.N.Y. Nov. 16, 2018); *Gov't Emp. Ins. Co. v. Wellmart, RX, Inc.*, 435 F. Supp. 3d 443, 456–57 (E.D.N.Y. 2020); *Allstate Ins. Co. v. Metro Pain Specialists Pro. Corp.*, No. 21-CV-5586 (DG) (RER), 2022 WL 2467571 (E.D.N.Y. Jun. 2, 2022); *Tolmasov*, 602 F. Supp. 3d at 386–87; *Landow*, 2022 WL 939717, at *5; *GEICO v. Wallegood, Inc.*, No. 21-CV-1986, ECF No. 36 (E.D.N.Y. July 16, 2021). Here, State Farm has made a similar showing and is entitled to the preliminary injunctive relief it seeks.

### 1. Irreparable harm

To establish irreparable harm, a party seeking a preliminary injunction "must show that 'there is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.' And, irreparable harm must be shown to be actual and imminent, not remote or speculative." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir.

2002) (quoting *N.Y. Pathological & X–Ray Lab'y, Inc. v. INS,* 523 F.2d 79, 81 (2d

Cir. 1975)).

"Irreparable harm occurs where 'an insurer is required to waste time

defending numerous no-fault actions when those same proceedings could be

resolved globally in a single, pending declaratory judgment action.'" *Gov't Emp. Ins.*

*Co v. Moshe*, No. 120-CV-1098 (FB) (RER),2020 WL 3503176, at *1 (E.D.N.Y. June

29, 2020) (quoting *Parisien*, 352 F. Supp. 3d at 233); *see also Gov't Emp. Ins. Co. v.*

*Advanced Comprehensive Lab'y., LLC*, No. 20-CV-2391 (KAM), 2020 WL 7042648,

at *4 (E.D.N.Y. Dec. 1, 2020) (same); *Gov't Emp. Ins. Co v. Strutsovskiy*, No. 12-CV-

330, 2017 WL 4837584, at *6 (W.D.N.Y. Oct. 26, 2017) (same); *Elzanaty*, 929 F.

Supp. 2d at 222 (same).

In addition, the "risk of inconsistent rulings" in underlying proceedings

constitutes irreparable harm. *See Elzanaty*, 929 F. Supp. 2d at 222 (noting the

"large realm of potential problems [an inconsistent declaratory judgment] may have

on the validity of [arbitration] awards, especially in light of their multitude and

internal inconsistency with each other"); *Metro Pain Specialists Prof. Corp.*, 2022

WL 2467571 ("Numerous courts in this district . . . have found irreparable harm

based on the risk of inconsistent judgments and uncoverable costs detailed by

Allstate."). Indeed, as explained by Judge Glasser in *Parisien*, multiple inconsistent

rulings could bar State Farm's ability to litigate significant portions of its

declaratory judgment action in federal court. *See* 352 F. Supp. 3d at 230.

As State Farm has argued, viewed in isolation by an individual state court or arbitrator, a particular claim for reimbursement may seem facially legitimate—but it is only after viewing them all collectively that the fraudulent patterns emerge. Mot. for Prelim. Inj. at 8–9, *see Parisien*, 352 F. Supp. 3d at 229.  However, were Kotkes to obtain a judgment in state court that it is entitled to reimbursement for the services provided to a particular patient, such a judgment would be *res judicata* for the purposes of this action.  *Parisien*, 352 F. Supp. 3d at 229 (citing *Gov't Emp. Ins. Co. v. Five Boro Psych. Servs., P.C.*, 939 F. Supp. 2d 208, 217 (E.D.N.Y. 2013)). Thus, if State Farm "suffers an adverse judgment in state court, this court will be bound to adhere to that decision even though the state court may not have been able to consider what seems to be the heart of" State Farm's case.  *Wallegood*, 21-cv-01986, ECF No. 36, at 18 (citations omitted) (quoting *Parisien*, 352 F. Supp. 3d at 329).  This is a particularly significant risk given the limitations of state court no-fault collection actions, where cases rarely are consolidated, and the proceedings are "special expedited" proceedings where "discovery is limited or non-existent." *Mayzenberg*, 2018 WL 6031156, at *6; *see Parisien*, 352 F. Supp. 3d at 230. Accordingly, State Farm may be deprived of the opportunity to litigate a substantial portion of its fraud complaint absent an injunction.  *See Parisien*, 352 F. Supp. 3d at 232 ("[I]ndividual actions would . . . impair a federal declaratory judgment action . . . and deprive State Farm of an avenue toward complete relief in *any* court.").

Inconsistent arbitral awards may have a similarly problematic impact on a future declaratory judgment.  *See Elzanaty*, 929 F. Supp. 2d at 222; *Cean*, 2019 WL

21

6253804, at *5 ("GEICO argues that wasting time and resources in arbitrations with awards that might eventually be, at best, inconsistent with judicial rulings and, at worst, essentially ineffective, constitutes irreparable harm.  The Court agrees."); *Landow*, 2022 WL 939717, at *12 ("[T]he focus of the court is whether irreparable harm would result should the 3,200 arbitration proceedings, in which the individual arbitrators would not have the capacity to consider the alleged fraudulent schemes, end inconsistently.  Undoubtedly the answer is yes.").  And no-fault arbitrations proceed on a similarly expedited basis.  *See Allstate Ins. Co. v. Mun*, 751 F.3d 94, 99 (2d Cir. 2014) ("New York's arbitration process for no-fault coverage is an expedited, simplified affair meant to work as quickly and efficiently as possible. . . Discovery is limited or nonexistent.").

Accordingly, the Court need not decide whether State Farm's litigation expenses, time, and energy spent defending nearly 200 parallel proceedings alone is sufficient to demonstrate irreparable harm.[4]  The risk of inconsistent judgments that could effectively render unavailable a significant portion of the relief State Farm seeks is sufficient to demonstrate irreparable harm.  Already $1,188,841 in unpaid claims is at issue in pending state court actions and arbitrations, and

---

[4] It bears noting, however, that at least one court in this district has concluded that the burden of defending scores of individual actions alone is sufficient to establish irreparable harm.  *See Gov't Emp. Ins. Co. v. Granovsky*, 19-cv-6048 (EK)(RER), 2022 WL 1810727, at *7 (E.D.N.Y. June 2, 2022) ("The morass of litigation that the company faces [in defending 149 individual claims] would hijack the resources of even a large entity's legal department. Adequately addressing these suits will require a massive effort at coordination. It is hard enough to fight a two-front war; a 149-front one is another story entirely. This harm would not be cured by money damages.").

$1,787,989.98 is not yet the subject of pending actions, but easily could be.  Bistline Decl. ¶ 9.

The two cases that Kotkes cites do not persuade the Court to conclude otherwise.  In *Allstate Ins. Co. v. Harvey Fam. Chiropractic*, the Second Circuit affirmed a denial of a request to stay no-fault arbitrations and civil collection suits. 677 F. App'x 716, 718 (2d Cir. 2017).  State Farm emphasizes that *Harvey* was an unpublished summary order without precedential effect, Reply in Supp. of Mot. for Prelim. Inj., ECF No. 23, at 5; *see* 2d Cir. Local R. 32.1.1(a), but Kotkes insists that this court should adopt *Harvey*'s reasoning that "mere injuries . . . in terms of money, time and energy necessarily expended absent a stay of ongoing state court and arbitration proceedings" cannot establish irreparable harm.  677 F. App'x at 717 (internal quotation marks and citation omitted) (alteration in original).  State Farm is correct that *Harvey* does not have precedential effect, and it further "does not 'set out the factual background of the case in enough detail to disclose whether its facts are sufficiently similar to those of'" this case to render it applicable here. *Wellmart RX*, 435 F. Supp. 3d at 451 (citation omitted).  Moreover, *Harvey* says "nothing of the risk of inconsistent judgments, or of the risk that money damages would not be available if plaintiff ultimately obtained a declaratory judgment."  *Id.*; *see also Metro Pain Specialists*, 2022 WL 2467571, at *5 ("Numerous courts in this district have rejected nearly identical arguments relying on *Harvey* . . . ."); *Tolmasov*, 602 F. Supp. 3d at 387 ("*Harvey* does not preclude injunctive relief, because irreparable harm may be established by 'the risk of inconsistent judgments,

or . . . the risk that money damages would not be available if plaintiff ultimately obtained a declaratory judgment.'"). This case does not counsel a different result.

Similarly, Kotkes cites to *Allstate Ins. Co. v. Avetisyan*, where Judge DeArcy Hall denied a motion for a preliminary injunction to enjoin defendants from proceeding with or filing new no-fault collection actions. *Allstate Ins. Co. v. Avetisyan*, 17-CV-04275 (LDH) (RML), 2018 WL 6344249, at*1 (E.D.N.Y. Oct. 30, 2018); *see Wellmart*, 435 F. Supp. 3d at 451. There, Judge DeArcy Hall concluded there was no risk of inconsistent judgments because the federal action was "premised upon an alleged pattern comprising discrete claims of fraudulent activity" by the defendants, but the defendants raised different claims in opposing the state court collection actions. *Avetisyan*, 2018 WL 6344249, at *4. By contrast, here State Farm not only challenges the underlying no-fault claims as fraudulent, but also argues that Kotkes was billing for medically unnecessary procedures. *See* Compl. ¶ 1; Reply in Supp. of Mot. for Prelim. Inj. at 9-10. These are the same issues that State Farm would raise in the individual collection proceedings Kotkes has brought. But indeed, "[a]ny finding by an arbitration panel that [defendant] has submitted a valid claim would necessarily entail a finding that the underlying [treatment] was medically necessary. . . and thus conflict if a declaratory judgment were entered in favor of [the insurer]." *See Wellmart*, 435 F. Supp. 3d at 451 (citing N.Y. Ins. Law §§ 5102(a)(1), (b)). Thus, even if the precise defense State Farm presented were not identical, State Farm would still face the irreparable harm of inconsistent judgments potentially precluding it from litigating a significant portion

24

of the relief it seeks before this Court.  Accordingly, *Avetisyan* is distinguishable here.

The Court finds that State Farm has demonstrated a likelihood of irreparable harm, absent injunctive relief.

### 2.  Serious question going to the merits

Additionally, State Farm must demonstrate "either 'a likelihood of success on the merits,' or 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly' in the movant's favor." *Parisien*, 352 F. Supp. 3d at 234 (quoting *Jackson Dairy v. H. P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. 1979)); *see Citigroup Glob. Mkt., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) ("The 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction.").  "Likelihood of success is not the focus at the early stages of a case such as this, because any likelihood of success inquiry would be premature.  Instead, the Court looks to whether there is a serious question going to the merits to make them a fair ground for trial." *Elzanaty*, 929 F. Supp. 2d at 217; *see also Parisien*, 352 F. Supp. 3d at 234; *Landow*, 2022 WL 939717, at *12; *Wellmart RX*, 435 F. Supp. 3d at 453.

Here, State Farm has established that there is a serious question going to the merits to make its claims a fair ground for litigation.  State Farm's complaint

alleges in detail Kotkes's extensive scheme of fraudulent activity, including providing systematized treatments unmoored from standards of medically necessary patient care. *See Wellmart RX*, 435 F. Supp. 3d at 453–54. And, as explained *supra*, these well-pled allegations survive Kotkes's motion to dismiss. Courts in this district have found that such a showing satisfies this prong of the preliminary injunction analysis. *See Elzanaty*, 929 F. Supp. 2d at 217 ("[T]he Court finds that the Plaintiffs have adequately demonstrated sufficiently serious questions going to the merits . . . The Plaintiffs have adequately detailed a complicated scheme of alleged fraudulent activity and the Court has already denied the Defendants' motion to dismiss for failure to state a claim."); *Metro Pain Specialists*, 2022 WL 2467571, at *5 ("A serious question can be found when a plaintiff has adequately detailed a complicated scheme of alleged fraudulent activity and its request for relief does not rest on mere hypotheticals." (internal quotation marks and citation omitted)).

### 3. Balance of hardships

Where a court applies the "serious questions going to the merits" standard, for a preliminary injunction to issue the court must find a "balance of hardships tipping decidedly" in the movant's favor. *Parisien*, 352 F. Sup. 3d at 234; *Citigroup Glob. Mkts.*, 598 F.3d at 33.

If a preliminary injunction issues and State Farm is unable to prove its claims on the merits, then "at worst" Kotkes's recovery of "the no-fault benefits to which [he] is entitled will be delayed." *Parisien*, 352 F. Sup. 3d at 234; *Wellmart*

*RX*, 435 F. Supp. 3d at 455.  And, in that event, Kotkes would be entitled to interest on those benefits.  *See* 11 N.Y.C.R.R. § 65–3.9(1)(a); *Elzanaty*, 929 F. Supp. 2d at 222 (Defendant "will benefit from a stay if it ultimately prevails in this matter, because it will be entitled to the collection of interest at a rate of two percent every month that the No-Fault payments are overdue.").

Kotkes argues that an injunction may limit his ability to recover no-fault benefits in the future, since most policies have a $50,000 limit and may be exhausted by the time this litigation resolves, if Kotkes prevails.  *See* Opp'n to Mot. for Prelim. Inj., ECF No. 22 at 11.  However, this argument is hypothetical—Kotkes does not identify any policies nearing exhaustion, nor any particular reason why this may be a legitimate, imminent concern for his patients.  *See Moshe*, 2020 WL 3503176, at *3 (noting that defendants' policy exhaustion argument "is speculative at best considering defendants do not identify any policies nearing exhaustion.").

Ultimately, both parties benefit from the injunction sought here because it relieves them of their obligation to separately litigate the merits of hundreds of individual claims before individual state courts and arbitrators.  *See Mayzenberg*, 2018 WL 6031156, at *7 ("It is obviously more efficient and beneficial for [medical provider defendants] if all of their claims are resolved in one action, rather than in hundreds of different proceedings.").

## B. Stay of the State Civil Court Proceedings

Having concluded that State Farm is entitled to preliminary injunctive relief, the Court next considers the scope of the requested injunction.  Namely, the Court

addresses whether State Farm is entitled to an order pending enjoining pending collection actions Kotkes has brought in state court, or instead to a more limited injunction that encompasses only (1) pending arbitrations, and (2) future collections actions and arbitrations.

Courts in this district have reached different conclusions as to whether a federal court may stay pending state court litigation in cases such as this one, or whether doing so is barred under the Anti-Injunction Act. Kotkes opposed State Farm's request for a preliminary injunction, but did not address State Farm's argument that—were the Court to grant the motion for a preliminary injunction— the Anti-Injunction Act does not preclude this Court from including pending state court actions within the scope of that injunction. Nevertheless, the Court has an independent obligation to consider whether it has authority to award the full extent of the relief State Farm seeks. For the reasons stated below, the Court concludes it has the authority to stay these pending state court proceedings and grants State Farm's motion for a preliminary injunction in full.

Under the All Writs Act, a federal court "may issue all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651. However, the Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

28

Many courts in this district have held that injunctions sought by insurers in this context seeking to stay pending state collection actions fall within the "in aid of jurisdiction" exception. *See Tolmasov*, 602 F. Supp. 3d at 392; *Landow*, 2022 WL 939717, at *13; *GEICO v. Wallegood, Inc.*, No. 21-CV-1986, ECF No. 36 (E.D.N.Y. July 16, 2021); *Parisien*, 352 F. Supp. 3d at 225–28.  However, a smaller number have taken a narrower view of this exception and declined to stay already-pending state court actions. *See Gov't Emp. Ins. Co. v. Granovsky*, 19-cv-6048 (EK)(RER), 2022 WL 1810727, at *3 (E.D.N.Y. June 2, 2022) (enjoining prospective collections actions and arbitrations but denying request to stay pending state civil court proceedings); *State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists P.C.*, 2022 WL 1606523, at *12-13 (E.D.N.Y. May 20, 2022), *appeal docketed,* No. 22-1386 (E.D.N.Y. June 29, 2022) (staying pending arbitrations, enjoining prospective collections actions and arbitrations but denying request to stay pending state civil court proceedings).

Historically, the "in aid of jurisdiction" exception has been "generally reserved for state court actions *in rem* because the state court's exercise of jurisdiction necessarily impairs, and may defeat, the federal court's jurisdiction over the *res*." *Wyly v. Weiss*, 697 F.3d 131, 137–38 (2d Cir. 2012) (citation omitted).  Yet an *in personam* action, which "involves a controversy over liability rather than over possession over a thing," "does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending." *Id.* at 138 (citation omitted).  The Second Circuit has recognized "a limited exception to the general rule

that the 'in aid of jurisdiction' exception does not permit a federal court to enjoin a parallel *in personam* action"—in other words, that there are limited circumstances in which a federal court can enjoin a parallel state *in personam* action. *United States v. Schurkman*, 728 F.3d 129, 137 (2d Cir. 2013). This exception was articulated in *In re Baldwin-United Corp.*, where the court held an injunction of pending *in personam* actions was justified where "the district court had before it a class action proceeding so far advanced that it was the virtual equivalent of a res over which the district court required full control." 770 F.2d 328, 337 (2d Cir. 1985).

The Court finds persuasive Judge Glasser's analysis of the "in aid of jurisdiction" exception, and its potential application beyond the advanced-class-action context, in *Parisien*, 352 F. Supp. 3d at 225–28. There, Judge Glasser explained how courts have "liberalized their interpretation of the in-aid-of-jurisdiction exception," and reasoned that "theoretical distinctions between *in rem* and *in personam* jurisdiction," in the absent of controlling precedent to the contrary, are not "sufficiently compelling to deny an injunction on that basis alone." *Id.* at 228; *see Wallegood*, 21-cv-01986, ECF No. 36, at 17 (rejecting the argument that plaintiff's request for a stay "should be denied solely because this is an *in personam*, rather than *in rem*, action"); *Landow*, 2022 WL 939717, at *13 ("Many courts have also become less willing to rely on the *in rem* versus *in personam* distinction as the sole justification for denying an injunction."). In accordance with this reasoning, this Court concludes that the "in aid of jurisdiction" exception applies to pending no-fault collection actions such as this one, in which an insurer-plaintiff has plausibly

30

alleged a broad pattern of fraud in a defendant's no-fault insurance claims that are also the subject of dozens of state court actions. *See Parisien*, 352 F. Supp. 3d at 232.

It may well be advisable to deny an injunction where the prospective state court judgment could "peaceably coexist with the district court's judgment." *Schurkman*, 728 F.3d at 139. State Farm has persuasively argued that this is not such a case. Indeed, here the 95 pending state court actions have the potential to conflict with—and even render ineffective—the declaratory judgment State Farm seeks. This is because "[a]ny judgment in the state no-fault proceedings will be *res judicata* for purposes of [a federal] action. Therefore, if State Farm suffers an adverse judgment in state court, this court will be bound to adhere to that decision, even though the state court may not have been able to consider what seems to be the heart of plaintiff's case." *Parisien*, 352 F. Supp. 3d at 229 (internal quotation marks and citations omitted) (observing that "[s]uch a result is anything but conducive to the orderly administration of justice"). Further, it is unlikely that the balance of federalism, which the Anti-Injunction Act was intended to safeguard, will be significantly disturbed by pausing individual collections actions in order to ascertain whether these actions may be dealt with more efficiently in a declaratory judgment action. Indeed, "New York courts routinely stay collection actions pending declaratory judgment proceedings." *Parisien*, 352 F. Supp. 3d at 232 (collecting cases). Accordingly, State Farm's request that this Court stay pending no-fault collection actions in state court is GRANTED.

31

## C. Obligation to Post Security

Finally, State Farm requests that this court exercise its discretion to waive the requirement that the moving party post security. *See* Mot. for Prelim. Inj., at 17. Kotkes does not oppose this request. *See generally* Opp'n to Mot. for Prelim. Inj.

Under Rule 65, "the court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). An "exception to the bond requirement has been crafted for cases involving the enforcement of 'public interests' arising out of 'comprehensive federal health and welfare statutes.'" *Wellmart RX*, 435 F. Supp. 3d at 456 (quoting *Pharm. Soc'y of State of N.Y., Inc. v. New York State Dep't of Soc. Serv.*, 50 F.3d 1168, 1174 (2d Cir. 1995)). To determine whether a claim involves the enforcement of public interests, a court looks to "the nature of the rights being enforced, rather than the nature of the entity enforcing them." *Pharm. Soc'y*, 50 F.3d at 1175. Further, "a district court has a wide discretion to dispense with the bond requirement 'where there has been no proof of likelihood of harm.'" *Wellmart RX*, 435 F. Supp. 3d at 456.

"Courts have repeatedly found that New York's no-fault laws are 'designed to protect accident victims regardless of fault by enabling them to obtain necessary medical attention without concern of the ability to pay,' and thus claims of fraud pertaining to these laws involve the enforcement of public interests." *Landow*, 2022

WL 939717, at *14 (quoting *Mayzenberg*, 2018 WL 6031156, at *10) (collecting

cases).  This is in recognition that "preventing fraud on our health care system is . . .

in the public's interest."  *Mayzenberg*, 2018 WL 6031156, at *10.  Accordingly,

because State Farm is alleging that Kotkes engaged in a fraudulent scheme to take

advantage of New York's no-fault insurance laws, this action falls within the public

interest exception.  Further, Kotkes has not demonstrated the likelihood of harm if

security is not posted.  The court GRANTS State Farm's motion to waive the

security requirement.

## IV.    Conclusion

Kotkes's motion to dismiss the complaint for failure to state a claim under

Rule 12(b)(6) is DENIED.

For the reasons stated above, State Farm's motion for a preliminary

injunction is GRANTED in full.  Specifically, the Court grants State Farm's request

to stay pending state civil court proceedings and no-fault arbitrations against State

Farm by Kotkes, and enjoins Kotkes from filing any new collection actions against

Kotkes seeking no-fault insurance benefits, whether in state court or in arbitration

proceedings, pending resolution of this declaratory judgment action, absent further

order of this Court.  State Farm's obligation to post security is waived.

SO ORDERED.

*/s/ Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated:    July 13, 2023
          Brooklyn, New York